296 So.2d 482 (1974)
GULF POWER COMPANY, a Corporation, Petitioner,
v.
William H. BEVIS et al., Respondents.
CITY GAS COMPANY OF FLORIDA, a Corporation, Petitioner,
v.
William H. BEVIS et al., Respondents.
FLORIDA POWER & LIGHT COMPANY, Petitioner,
v.
FLORIDA PUBLIC SERVICE COMMISSION, Respondent.
FLORIDA GAS COMPANY, Petitioner,
v.
William H. BEVIS et al., Respondents.
SOUTHEASTERN TELEPHONE COMPANY and Florida Central Telephone Company, Corporations, Petitioners,
v.
William H. BEVIS et al., Respondents.
Nos. 44189, 44190, 44198, 44199 and 44801.
Supreme Court of Florida.
June 13, 1974.
D. Fred McMullen and Lee L. Willis, Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, Bert H. Lane, Beggs, Lane, Daniel, Gaines & Davis, Pensacola, and Earl B. Hadlow, Mahoney, Hadlow, *483 Chambers & Adams, Jacksonville, for petitioners Gulf Power Co., etc. and City Gas Co. of Florida.
William C. Steel, Shepard King, and Charles A. Citrin, McCarthy, Steel, Hector & Davis, Miami, and Earl B. Hadlow, Mahoney, Hadlow, Chambers & Adams, Jacksonville, for petitioner Florida Power and Light Co.
R.Y. Patterson, Jr., and Norman E. Duke, Winter Park, for petitioner Florida Gas Co.
D. Fred McMullen and Lee L. Willis, Ausley, McMullen, McGehee, Carothers & Proctor, Tallahassee, and Karl Berolzheimer, Ross, Hardies, O'Keefe, Babcock & Parsons, Chicago, Ill., for petitioners Southeastern Telephone Co. and Florida Cent. Telephone Co.
William L. Weeks, Donald R. Alexander, Tallahassee, Arthur J. England, Jr., Miami, Counsel for Governor, Arthur C. Canaday, Tallahassee, Gen. Counsel for Governor, Robert L. Shevin, Atty. Gen., and William R. Hanley, Asst. Atty. Gen., for respondents William H. Bevis, and others in Gulf Power Co., City Gas Co. of Florida, Florida Power and Light Co., Florida Gas Co., and Southeastern Telephone Co. and Florida Cent. Telephone Co.
Earl B. Hadlow and W.H. Adams, III, Mahoney, Hadlow, Chambers & Adams, and Walter H. Alford, Jacksonville, for Southern Bell Telephone and Telegraph Co.
Arthur C. Canaday, Tallahassee, Gen. Counsel for Governor, Arthur J. England, Jr., Miami, Sp. Counsel for Governor, Robert L. Shevin, Atty. Gen., and William R. Hanley, Asst. Atty. Gen., for amicus curiae in Southeastern Telephone Co. and Florida Cent. Telephone Co.
ERVIN, Justice.
We have for review by writ of certiorari Rule 25-14.02 adopted by the Public Service Commission which provides that in rate proceedings the Commission will treat as an operating expense so much of the Florida corporate income tax imposed by Chapter 220, Florida Statutes, F.S.A., enacted to implement Section 5(b), Art. VII, Florida Constitution, F.S.A., as is necessary to prevent the allowable earnings of a regulated company from falling below the minimum fair, just and reasonable rate of return allowed by the Commission from time to time. We have consolidated herewith sua sponte Case No. 44,801, inasmuch as it involves the same issues raised by the other petitioners here. In a footnote hereto Commission's Rule 25-14.02, along with Rule 25-14.01, are set out in full.[1]
*484 The Petitioner utilities herein contend the Commission's corporate income tax concept embodied in its rule is contrary to the intent of the Legislature in enacting Chapter 220, Florida Statutes, F.S.A., and will unconstitutionally deprive a utility of the opportunity to earn a fair rate of return by requiring the computation thereof without allowing the utility to recover all tax expenses for which it is legally obligated.
Specifically, Petitioners contend a utility is entitled to earn a fair return on the value of its property devoted to public utility service. That is, a return over and above the normal costs of doing business such as maintenance and operating costs, depreciation expenses, and taxes, which they contend the utility is entitled to recover through its rates in addition to a return on investment. They contend that money that has been lawfully spent for payment of taxes, or for which the utility is obligated, as a cost of doing business constitutes no part of the fair return to which the utility is entitled, and the dollar paid out or required to be paid out for taxes is no more available as income than a dollar spent for labor or any other legitimate expense. They cite Fed. Power Com. v. Hope Nat. Gas Co. (1944), 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333, to the effect that:
"... it is important that there be enough revenue not only for operating expenses but also for the capital costs of the business. These include service on the debt and dividends on the stock ..."
Petitioners particularly rely upon this Court's pronouncement in Gulf Power Co. v. Bevis (Fla. 1974), 289 So.2d 401, that the Florida corporate income tax must be considered "as another cost of doing business ... the same as other operating expenses."
On the other side of the question at issue, the Commission as justification for its rule states therein that:
"It is hereby determined that the Florida corporate income tax was enacted as part of a major tax program for the State of Florida, and that the major thrust of that program was to shift tax burdens from natural persons in the state who are its citizens and residents to corporate entities. It is further determined that the Commission should promulgate all reasonable rules consistent with that tax reform effort... ."
In its brief the Commission alludes to general propositions that rules and orders of the Commission have been held by this Court to come before it
"... clothed with the statutory presumption that they have been made within the Commission's jurisdiction and powers, and that they are reasonable and just and such as ought to have been made. On review this presumption of validity can only be overcome either where the Commission's error plainly appears on the face of the order or where such weakness is made to appear by clear and satisfactory evidence." General Telephone Company of Florida v. Carter (Fla. 1959), 115 So.2d 554, 556.
It further contends that the Commission is reposed with plenary powers in exercising its jurisdiction and control over utility *485 companies and their rates. Storey v. Mayo (Fla. 1968), 217 So.2d 304.
The Commission points out that F.S. Section 336.041 F.S.A., provides "no public utility shall be denied a reasonable rate of return upon its rate base," and so long as a utility's rates and charges are fair and reasonable and it is earning a reasonable rate of return upon its investment, all statutory requirements will have been met. Therefore the Commission contends that if after application of the subject rule for implementation of a "sharing concept" among the utility, its stockholders and rate payers, the utility is still earning a minimum fair and reasonable rate of return, the statutory criteria for rate fixing with the "sharing concept" included will have been legally followed. The Commission points out that the rule provides all rate-fixing procedures and computations
"shall be in such a manner that the amount of tax cost to be borne by customers of those companies shall be no more than is required to assure those companies a minimum fair, reasonable and just rate of return."
Under the formula of the rule the Commission contends the utilities will have suffered no constitutional deprivation of rights nor will they have been treated in any manner other than that which is consistent with the requirements of law.
The Commission contends the rule does not destroy "the zone of reasonableness concept" employed in rate fixing since earnings at any point within the zone, whether they be at the floor, ceiling or midpoint, represent a fair and reasonable return. This is so, argues the Commission, because the zone merely sets the limits within which the rate can fluctuate and still remain just and reasonable.
The Commission further maintains the Petitioners' contentions cannot withstand the "end result" doctrine's practicable and rational application, citing the doctrine's origin and effect as enunciated in Federal Power Comm. v. Hope Natural Gas Co., supra, which doctrine has also been adopted by the Florida Supreme Court. Thus the Commission contends that if its rule eventuates a final result of a fair and reasonable return to a utility including the "sharing concept" none can say the return amounted to a confiscation or unlawful deprivation to the utility.
The Commission states there is ample precedent in the rate-making field for disallowance of certain operating expenses for rate-making purposes and the same have been held not chargeable to rate payers but deductible from the profits of the company and thus charged instead to the investors of the utility. The Commission cites such disallowed items from operating expense as certain litigation costs, excessive salaries of officers of utilities, political and lobbying expenses, civic and service club dues.
It was argued before this Court without contradiction that certain Federal tax surcharges have been disallowed as operating costs in rate-fixing cases.
In its brief filed in this review Southern Bell Telephone Company, while stoutly maintaining the Commission's rule is illegal, obliquely appears to agree that even without a rule no complete "pass-on" of the corporate income tax to rate payers ever happens. It contends the normal rule-less practical result of the impact of the tax is as follows:
"... However, contrary to the Commission's assumption, the `sharing concept' does not require adoption of the Commission's rule. The tax burden is shared under the application of the Gulf Power principle. As this court pointed out in its Gulf Power opinion, treating the tax as a normal operating expense does not result in a total `pass through' of the tax but instead achieves a fair `sharing between utility and user.'
"All the utilities which were earning above the fair and reasonable rate when *486 the tax was enacted necessarily have to absorb most or perhaps all of the corporate income tax. None of these utilities could seek a rate of return to fall below its fair rate of return. Even then the utility could not increase its tariffs by the full amount of the corporate income tax. Under the Gulf Power principle tariffs could be increased only by an amount equal to the portion of the tax required to raise the utility's return back to the fair and reasonable rate.
"Utilities which were earning at or below the fair rate when the tax was passed also share the tax burden. The tax immediately decreased their net income. Because of regulatory time lag none of these utilities could shift any of this burden to consumers for a considerable period of time. The utilities will never be able to retrieve this loss of income.
"Under the Gulf Power approach these utilities will continue to share the tax burden even after they obtain any warranted tariff increases. The utility will not benefit as much from increased revenues or from increased efficiency and decreased costs as it would have before the adoption of the corporate income tax for example, before the adoption of the Florida income tax a utility was able to retain $52 out of every $100 increase in before tax profits. The other $48 went to the federal income taxes. Under the Gulf Power application of the new Florida tax at its current rate of 5%, the company will only be able to retain $49.40 out of every $100 increase in before tax profits. The state will get $5 in tax and the federal government $45.60 [($100-$5) x 48% = $45.60]. The State of Florida will tax the entire $100 increase and the utility will bear the entire burden.
"The sharing which would occur under the Gulf Power approach is the kind of sharing that was envisioned by the legislature. The Commission purports to base its new rule on the representations of intent made by the Governor's consumer adviser and the written statements of twelve legislators chosen by the Governor's adviser. These statements should not have been admitted into the record and certainly do not provide an adequate basis for a finding of legislative intent. See Security Feed & Seed Co. v. Lee, 189 So. 869 (Fla. 1939); FPSC Rule 25-2.113. Nevertheless, even if the Commission could have properly considered the statements, the Gulf Power approach is not inconsistent with them.
"For example, the Gulf Power approach is consistent with each of the points made in the following excerpt from the statement of Honorable Ralph D. Turlington who was Chairman of the House Committee on Finance and Taxation when the corporate income tax was adopted:
`I think by the time the final vote was taken on the Corporate Income Tax legislation, several points were clear to most legislators:
`(1) that there would be no tax pass-on unless a particular utility was involved in a rate increase proceeding;
`(2) that no one utility company could at that time justify a request for a rate hike solely on the basis of the new cost of the income tax to that utility;
`(3) that if a rate request were proposed to the Public Service Commission that body had the responsibility to analyze whether the hike was warranted at all; and
`(4) that the Commission would not allow the tax cost to be passed on so long as a fair return was being earned by the particular utility at the particular time of its rate hike request. In other words, the legislature had been led to understand that, before the state income tax liability of a particular company was translated into increased tax costs to customers, the Commission would exercise its statutory duties by *487 taking into account all of the facts and circumstances relative to the financial position of the particular corporation.'"
This being the situation, Southern Bell's objection to the rule to systematize and correlate the rate-making process in harmony with the corporate income tax appears to be without substantial merit.
In Gulf Power Company v. Bevis, supra, this Court while agreeing that the corporate income tax must be taken into account as a part of the operating expense of the utility did not purport to go so far as to exclude the systematic treatment given it by the Commission's rule in question. Instead the Court pretermitted passing upon the rule's validity, saying it would be considered in other cases now pending before the Court "and it is not our intention in this cause to make any pronouncement disposing of such other cases now pending." 289 So.2d at 408.
In Gulf Power this Court speaking through Justice Dekle held the tax is an operating expense
"not to be treated separately but to be generally applied with all other expenses and factors involved in determining a fair return to the utility. Such overall consideration may, as we have said, result in the entire dollar tax not being a literal `pass through' of the total tax to the users. It will depend upon the total picture. The guiding `light' or consideration, as stated at the outset, is a fair return as constitutionally dictated. With this approach, the tax falls into perspective, as other operating expenses, and any resultant `sharing' between utility and user is thereby reflected in the determination of the rate demanded by a proper return. It is plain that it is not a direct, independent `one for one' allowance or express `deduction,' as respondents [the Commission] apparently view it, but is a consideration with all others in arriving at a fair return for utilities as required by the U.S. and Florida Constitutions." 289 So.2d at 407.
Thus the Court foreshadowed its view that F.S. Ch. 220, F.S.A., implementing Section 5(b), Art. VII, Florida Constitution, will be read in connection with other pertinent provisions of the Constitution in its consideration of the rule. Other pertinent provisions of the United States and Florida constitutions may be generally summed up as those familiar provisions of the Constitution which preclude rates confiscatory to a utility or excessive to its consumers or rate payers; that is to say those prohibiting the taking of property without making just compensation or lacking equal protection or due process.
Repeating from the majority opinion in the Gulf Power case, it states that, constitutionally dictated,
"the [corporate income] tax falls into perspective, as other operating expenses, and any resultant `sharing' between utility and user and is thereby reflected in the determination of the rate demanded by a proper return." 289 So.2d at 407.
This principle is echoed by former Chief Justice Carlton's concurring opinion in Gulf Power. He says the rule is
"equitable to both utility investors and consumers .. . This Order allows the tax to be treated as an operating expense, but only to the extent necessary to provide stockholders the minimum fair return on their investment." 289 So.2d at 409.
As pointed out by the Commission, it has considerable discretion and latitude in the rate-fixing process. In City of Miami v. Public Service Commission (Fla. 1968), 208 So.2d 249, upon reviewing the statutes empowering the Commission to fix rates we concluded "these statutes repose considerable discretion in the Commission in the rate-making process."
Although public utilities are in most instances monopolies and consequently governments *488 fix their rates, it does not follow that they are wholly differentiated in respect to tax burdens from private corporations whose rates are unregulated. Assuming the "zone of reasonableness" of a utility's rate is just, there is latitude as in the case of a private corporation for it to earn, with the exercise of business incentive and enterprise and economy, profits sufficient to bear a fair share of the corporate income tax burden without deprivation or confiscation. Petitioners appear to want a guaranteed cost-plus arrangement in the rate-fixing process eliminating any sharing of this tax burden which unregulated corporations cannot altogether escape. Petitioners overlook that a fixed utility rate  an estimated one  which operates prospectively, if within the "zone of reasonableness," is very similar to the prices or charges that an unregulated corporation may reasonably require in the competitive market. The utility company and the unregulated company draw their sources of income from consumers. Neither one should expect to be able to "pass on" completely their tax burdens to their patrons or consumers without some impact on their profits. The Commission's rule realistically recognizes the inevitable necessity of both the regulated and the unregulated corporate entity sharing tax burdens from their profits.
The Commission when confronted with the problems of the new corporate income tax took into account its history and purpose including the claim of its proponents that it would have impact upon the income of all corporate entities and concluded with good reason that some rule should be provided to insure that there would be no complete escape of the tax by a regulated utility and its investors at the expense of its rate payers. It was recognized by the Commission that many unregulated corporations could not completely escape the impact of the State's corporate income tax upon their profits by passing it on to consumers or users. To prevent inequality of treatment among corporations the Commission decided utilities' profits should bear some of the impact of the corporate income tax. Hence its rule.
The foregoing considered we agree the rule should be sustained but subject to limitation and amendment. It is our conclusion the word "minimum" in 25-14.02(b) and (c) should be eliminated in keeping with the Commission's view expressed in its brief that the "zone of reasonableness" taking into account the corporate income tax should have "limits within which the rate can fluctuate and still remain just and reasonable." A "minimum" fair, just and reasonable rate of return might well be too stifling to a utility in periods of growth or need for correction of inadequate service  greatly increasing its requirements of equity capital or other investment relief which a "minimum" return with the corporate income tax superadded might defeat. In other words, a minimum rate might be satisfactory in some rate situations but not in others.
It is our view the claim of the Petitioners in this case that no "sharing" can be legally permitted is entirely too stringently Draconian and one-sided. There is no legal prohibition thereof in the absence of a clear showing of confiscation, i.e., a wholly inadequate return to the utility. Petitioners' contention goes beyond the limits of good citizen taxpayer responsibility. No group, including utilities, is immune to the burden of taxes. All must share the cost of government.
While we approve the rule, we do so with the admonition to the Commission that it must never apply the rule niggardly in its rate fixing or in ways that would clearly cripple a utility's capabilities to provide adequate services to its customers or curtail its ability to induce investors to respond to its capital needs.
With the foregoing modifications and caveats indicated, we discharge the writs.
It is so ordered.
*489 ADKINS, C.J., and ROBERTS and McCAIN, JJ., concur.
BOYD, J., concurs specially with opinion.
OVERTON, J., concurs specially with opinion.
BOYD, Justice (specially concurring).
I would not modify the order of the Respondent-Commission adopting Rules 25-14.01 and 25-14.02, which provides in part as follows:
"In any rate proceeding, the Commission will treat as an operating expense so much of the tax imposed by Chapter 220, Florida Statutes, as is necessary to prevent the allowable earnings of a regulated company from falling below the minimum fair, just and reasonable rate of return allowed by the Commission from time to time... ."
The Legislature, in enacting Chapter 220, Florida Statutes, F.S.A., has imposed a corporate income tax against utility companies and other corporations, and the Respondent-Commission's Rule, supra, has provided that, after payment thereof, utility companies shall receive a fair, reasonable and just return for their stockholders on their investment. This rule seeks to balance the equities between the utility stockholders and the consumers by attempting to reconcile two apparently conflicting provisions of law, i.e., that the corporate tax must be paid by the utility company and that the utility company stockholder is entitled to a just and fair return on his investment.
In my view, Petitioners' argument that the rule contemplates an unjust return is unfounded; the Respondent-Commission's record indicates that it has generally established rates based on fairness and equity; therefore, I find no reason to become alarmed over the use of the term "minimum fair, reasonable and just rate of return" in the Rule. The records of this Court show that it has always stood ready to correct any unfair rate base established by the Respondent-Commission.
For the foregoing reasons, I would discharge the writs without modification of the Rule.
OVERTON, Justice (concurring specially).
The elimination of the word "minimum" in the order of the respondent commission by the majority opinion makes a difficult rate-making task even more difficult. The commission has the responsibility in establishing a proper rate to make sure that there is no constitutional deprivation of rights of the utility. Neither the rule of the commission, nor as modified in the majority opinion, unconstitutionally deprives a utility of the opportunity to earn a fair rate of return.
NOTES
[1] "25-14.01 In General. The Commission is responsible for the setting of reasonable rates and charges of numerous utility and transportation companies. In determining reasonable charges to be paid by the customers of these companies, the Commission promulgates policy determinations affecting all companies subject to its jurisdiction. This chapter has been established to identify policy determinations affecting the rates, charges and tariffs of all companies subject to our rate-setting jurisdiction.

"25-14.02 Florida Corporate Income Tax.
"(a) It is hereby determined that the Florida corporate income tax was enacted as part of a major tax program for the State of Florida, and that the major thrust of that program was to shift tax burdens from natural persons in the state who are its citizens and residents to corporate entities. It is further determined that the Commission should promulgate all reasonable rules consistent with that tax reform effort. Accordingly, except as provided in paragraph (b), no portion of the tax imposed by chapter 220, Florida Statutes, shall be allowed to be treated as an operating expense in the computation of allowable rate of return or earnings for companies subject to rate-making jurisdiction of the Commission.
"(b) In any rate proceeding, the Commission will treat as an operating expense so much of the tax imposed by chapter 220, Florida Statutes, as is necessary to prevent the allowable earnings of a regulated company from falling below the minimum fair, just and reasonable rate of return allowed by the Commission from time to time. In determining the amount of said tax to be treated as an operating expense in any rate proceeding, the Commission shall prescribe procedures suitable to each class of regulated companies. (Emphasis added.)
"(c) All accounting procedures and computations involved in the determination of rates, tariffs or charges for companies subject to the rate-setting jurisdiction of this Commission, including but not limited to the computation of operating income deficiencies and ultimate revenue requirements, shall be made in such a manner that the amount of tax cost to be borne by customers of those companies shall be no more than is required to assure those companies a minimum fair, reasonable and just rate of return. (Emphasis added.)
"(d) All application for rate increases which are filed after the adoption of this chapter 25-14 shall conform to and reflect these rules, and all applications which are pending at the time these rules are adopted shall be amended by the applicants."