308 So.2d 5 (1975)
In re Inquiry Concerning a Judge [Hal P. DEKLE] No. 74-14 before Florida Judicial Qualifications Commission.
No. 46600.
Supreme Court of Florida.
February 4, 1975.
Rehearing Denied February 17, 1975.
Robert Orseck and Walter H. Beckham, Jr., Podhurst, Orseck & Parks, Miami, for Hal P. Dekle, petitioner.
Andrew G. Pattillo, Jr., Ocala, and Fletcher G. Rush, Orlando, for Florida Judicial Qualifications Commission, respondent.
*6 PER CURIAM.
This matter involves a disciplinary proceeding in which the Judicial Qualifications Commission instituted proceedings under Article V, Section 12, Florida Constitution, and found Petitioner Justice Hal P. Dekle guilty of conduct unbecoming a judge and has recommended to the Supreme Court of Florida that he be removed from office. Petitioner seeks herein to have the Court reject the recommendation or modify it.
The Commission gave notice to Justice Dekle on September 16, 1974, that formal proceedings had been instituted to inquire into the charges against him alleging he had engaged in conduct unbecoming a member of the judiciary in the role which he played as a member of the Supreme Court of Florida in the case of Gulf Power Company v. Bevis, et al., Case No. 43,245, which was not free from impropriety and appearance of impropriety; that his conduct in said case gave credence to and justified the impression that he was improperly influenced in his official duties by communications with one of the attorneys representing parties in the case, one Edwin L. Mason, of Tallahassee, Florida, which communications were both ex parte and dehors the record; that his conduct and ex parte communications with the above named attorney justified the impression that said attorney improperly influenced him; "and that both of your opinions in said case were affected by the position or influence of said attorney or other persons"; and that his aforementioned conduct has caused public confidence in the integrity and impartiality of the Supreme Court to be eroded.
These charges were bottomed principally on Canon 3, subd. A(4) of the Code of Judicial Conduct:
"A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding. A judge, however, may obtain the advice of a disinterested expert on the law applicable to a proceeding before him if he gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond."
In the evidentiary hearings that ensued the notification to Justice Dekle that his conduct was being inquired into as described, it appears that Gulf Power Co. v. Bevis, Case No. 43,245, was orally argued on June 7, 1973, before a Supreme Court panel of five members consisting of Chief Justice Carlton, Justices Adkins, Boyd, McCain and Dekle.
Reference to our opinion filed today in the Commission inquiry concerning Justice Joseph A. Boyd, Jr., will supply some of the relevant facts involved in the handling and disposition of the Gulf Power Company v. Bevis case in the Supreme Court making it unnecessary to repeat them here.
The evidence reflects that in the latter part of July, 1973, Mason visited Justice Dekle in his office in the Supreme Court building. Mason testified that he had already delivered a legal memorandum to Justice Boyd for his utilization in preparing the majority opinion reversing the Public Service Commission in the Gulf Power Company v. Bevis case, and wanted also to leave a copy of it with Justice Dekle because of the tenor of his questions at the oral argument, and in the event Petitioner's thinking was along the "lines" of his questions. Justice Dekle testified that he then accepted the memo upon Mason's representation that he had already given a copy of it to Justice Boyd thinking it was a copy of a duly filed amicus submission; and that it was left upon his cluttered desk by Mason in a manila envelope and remained there over three months unopened and unread by him (Dekle).
*7 In October, 1973, Justice Boyd put into circulation an opinion affirming the Public Service Commission in the Gulf Power Co. v. Bevis case. Justice Dekle, who along with the panel had unanimously agreed immediately after the oral argument to reverse the Public Service Commission, felt that the majority's view of the case required him to draft a dissenting opinion to Justice Boyd's proposed opinion of affirmance. Justice Dekle testified that on commencing his work on the dissent, he recalled the Mason memo and opened the envelope and reviewed it, made notes on it, and delivered it to his Research Aide, Jack Shaw, with the file as a work sheet for the dissent drafting process. Mason's "memo" was utilized in this manner by Dekle.
Mason had been known to Justice Dekle for many years since law school  both as an attorney and as a public servant having served as a County Commissioner in Dade County and as a member of the Public Service Commission and had been a member of the Bar for 30 years. Since Mason's reputation was unblemished, Justice Dekle testified he had no reason to nor did he look for or suspect any impropriety in the delivery to him of the memo, a copy of which Mason said he had already filed with Justice Boyd.
Justice Dekle testified filings with individual justices of copies of duly filed briefs, memos, and letters of attorneys were not uncommon, and consequently he had no inkling that the memo given to him by Mason would turn out to be "ex parte".
The evidence reflects Justice Dekle ultimately was advised by then Chief Justice Carlton that his dissent had been agreed to by the other members of the panel except Justice Boyd, and that he should convert it into a majority opinion but that he, Carlton, had learned from his Research Aide, David LaCroix, that the dissenting opinion that Dekle had prepared was substantially similar to an ex parte memo that had been improperly put in Boyd's possession and it would be advisable for Dekle to modify the language of his majority opinion so as not to have it resemble the Mason memo. Dekle recast his dissent as a majority opinion being altered and revised to the satisfaction  on the law  of the majority of the panel except Boyd and was released on January 30, 1974. See Gulf Power Co. v. Bevis, 289 So.2d 401, (Fla. 1974).
On learning of this similarity between his opinion and the ex parte memo that had been in Boyd's possession, Dekle testified he became disturbed and concerned and for the first time became aware that the Mason memo was improper.
It appears in the evidence that after he had delivered the memo in July, 1973, to Justice Dekle, Mason came to the Supreme Court on Friday, November 30, 1973, for the purpose of inquiring from the Chief Justice or the next Justice in line of seniority in the Court at the time when a decision might be forthcoming in the Gulf Power Co. v. Bevis case, since it was important as a guideline to various utility companies. Justice Dekle was on sole duty late that afternoon and he testified that Mason saw him and that he (Dekle) merely told Mason in reply to his inquiry concerning when the case would be concluded that he would see about expediting it.
After Mason left the building, Justice Dekle went to Justice McCain's office and had McCain's secretary, Mrs. Barbara Williams, type the following interoffice memo to Justice McCain:
"Judge Dekle asked me to write you this note: `HPD says that he thought you were with him on his "dissent"; that Ed Mason spoke to him on it but missed seeing you.'"
The evidence indicates Mason was a friend of Justice McCain's. This interoffice memo made it appear that Dekle was lobbying McCain for support of his dissent. This was unfortunate for the overall record shows that the appearance was substantially worse than the reality of what really occurred.
*8 As is explained in our opinion concerning the inquiry relating to Justice Boyd, the interoffice memo from Justice Dekle to Justice McCain was leaked by an aide of the Court to the press and created considerable furor and helped generate the Judicial Qualifications Commission inquiry into the conduct of Justices Dekle and Boyd.
The evidentiary hearings in both inquiries revealed that the final opinion in Gulf Power Co. v. Bevis, Case No. 43,245, did not follow the Mason memo; that Justice Dekle bottomed his final majority opinion on the filed briefs and the record. In a later opinion of the whole Court, except Justice Dekle who recused himself because of the furor, a portion of the Dekle opinion was quoted from in part and not disavowed. See Gulf Power Co. v. Bevis (Fla. 1974), 296 So.2d 482.
The Commission's counsel conceded at the evidentiary hearing in this inquiry that the Mason ex parte memo had no effect on Dekle's vote in the case and that the opinion in final form was based only on the briefs and record filed. From oral argument onward, it appears Justice Dekle held the set view that the State's corporate income tax upon utility companies was an expense of operation costs and must be "passed through" to consumers. The proofs showed that the Dekle opinion summarized matters in the briefs.
The Judicial Qualifications Commission found as a result of its inquiry of Justice Dekle that "he engaged in an ex parte communication with one Edwin L. Mason of Tallahassee, Florida, concerning the case and at that time accepted from Mason a written document which was in the form of a court opinion or memorandum of law suitable for inclusion or use otherwise in the preparation of an opinion for the Court in the Gulf Power case"; that he "used (or directed, or knowingly permitted and allowed his Research Aide to use) in the preparation of a draft of a proposed dissenting opinion in the Gulf Power case, the document which Mason had previously submitted to him"; that "at the time the dissenting opinion was returned to Respondent [Dekle] for conversion into a majority opinion, it was brought to Respondent's [Dekle's] attention that the opinion prepared by him bore a striking resemblance to the Mason ex parte document and it was suggested that in converting his dissent to a majority opinion, that it be changed to such extent as may be necessary to eliminate the appearance of resembling the Mason document. The suggestion made to Respondent [Dekle] was followed and the rewritten opinion which he prepared was then concurred in by a majority of the panel and became the law of the case upon the filing of the opinion by the Court on January 30, 1974"; and that "as a result of information acquired or suspected by the press there occurred widespread publicity inferring, if not directly charging, that ex parte actions by interested persons with members of the Court had influenced or sought to influence the Court in any decision which it might thereafter render in the Gulf Power Company case."
The Commission contends that Justice Dekle's misconduct is bottomed on the fact that despite his claim he first learned in late October or November, 1973, after he prepared his dissent, that the Mason memo which he received some months before, was "ex parte" and improper, he had the "ammunition" from the time he received it and used it in preparing his dissenting opinion because of the nature of his receipt of it, its format and the absence on it of a certificate of service on other counsel, to know it was an improper communication violating the Code of Judicial Conduct. That despite the fact he knew or should have known it was improper, he nevertheless utilized it in the preparation of his dissenting opinion.
On the other hand, Justice Dekle maintains that he had no reason to expect, anticipate or believe any impropriety occurred when Mason gave him the memorandum. He said he received it off-handedly thinking *9 that it had been properly filed in the case as an amicus submission since Mason told him when he handed it to him that it was a legal memorandum relating to the Gulf Power Company v. Bevis case, a copy of which he had given to Justice Boyd, who Justice Dekle knew had been assigned the case to write the majority opinion reversing the Commission as agreed to by the panel at the end of the oral argument. That some three months later, when he saw that Justice Boyd was circulating an affirming opinion contrary to the tentative agreement of the panel, he (Dekle) rummaged around on his cluttered desk, found the Mason memorandum and, along with his Research Aide, Jack Shaw, used it in preparing a dissenting opinion to Justice Boyd's.
Justice Dekle testified that at no time in the preparation of a dissent did he have reason to suspect the memo was improper; that Justice Boyd at that time had not disclosed to Justice Dekle or any of the other members of the Court or the press the information that the Mason memo was improper.
He pointed out that Court case files are often accompanied with papers and documents of all kinds from various sources, not only from the litigating parties, but also interoffice memos, research aide memos, relevant legal treatises, law review articles, news clippings and editorials, and articles from legal magazines and law journals. He pointed out that lawyers sometimes furnish Justices copies of their briefs and documents which have been duly filed in the Clerk's office  particularly amicus briefs and petitions for rehearings and petitions for extraordinary writs. He testified that Justices are "bombarded" with copies of legal briefs, memos, etc., from many sources and that it is entirely possible extraneous and improper materials can reach a Judge's desk without him being acutely conscious of them.
He testified that in the trial courts where he was formerly a Circuit Judge, it was not unusual for Circuit Judges to receive from counsel in pending cases legal memoranda for use of the Judge in preparing proposed orders or judgments.
The only cogent evidence produced on this divergent issue of whether there was a knowing deliberate violation of the Code of Judicial Conduct is the testimony of Mason and Justice Dekle. There is no material dispute in their respective testimony. The matter resolves itself into what are the correct inferences to be drawn from the undisputed evidence. It is true Justice Dekle received the ex parte memorandum from Mason and used it, but the questions are: Did he receive it knowing it to be improper and intentionally use it for a corrupt purpose, or is it immaterial to a determination of guilt whether he knew it was improper? These questions are difficult ones.
The Commission contends that the failure of Justice Dekle to recognize and immediately repudiate the communication from Mason as ex parte is in and of itself so serious a breach of the Code of Judicial Conduct as to warrant his removal from the bench. The Commission contends that such a breach is so damaging to the legal system as to be beyond excuse; that it is immaterial that there was no malafides, crooked or corrupt motive on Justice Dekle's part; or that the outcome of the litigation was correct  followed the law  and did no damage to the rights of the parties. The Commission cites in support of its various contentions Geiler v. Commission on Judicial Qualifications (1973), 10 Cal.3d 270, 110 Cal. Rptr. 201, 515 P.2d 1; In re Diener and Broccolino (1973), 268 Md. 659, 304 A.2d 587; In re Foster (Md. 1974), 318 A.2d 523; In the Matter of Spitalnick (1973), 63 N.J. 429, 308 A.2d 1; and In The Matter of Suglia (1971), 36 A.2d 326, 320 N.Y.S.2d 352. The rationale of these cases is that objective and not merely subjective misconduct warrants judicial discipline; that even if there is no implication of harm to any litigant, but a *10 Judge has intentionally committed an act which he knew or should have known was beyond his power, he is guilty of misconduct; and that when a Judge's bad faith is directed toward the legal system itself, it constitutes misconduct. We agree to these principles. It is obvious we must guard against subversion of confidence in the legal system itself. However, each case of misconduct presents an individual situation which under the Constitutional provision relating to discipline of Judges places within the sound discretion of this Court the duty to determine the measure and extent of discipline to be meted.
Contrary to the contentions of the Commission, Justice Dekle contends that because there was no malafides on his part in the ex parte communication affair, and he was an innocent victim reposing confidence in an attorney known to him to be reputable, he should not be removed from the bench. He contends he is guilty of no misconduct  there was no scienter on his part  no wilful, deliberate and knowing violation of the Code. But he contends that even if he is technically guilty, his lack of bad faith and moral turpitude in the matter should excuse him from removal from the bench.
He contends the cases cited by the Commission for its harsh recommendation of removal all carry the implication that the conduct involved in them was "intentional" and not the result of inadvertence. He contends that the Mason ex parte communication affair does not conclusively demonstrate his unfitness or unsuitability to grace the bench; that the overly harsh removal recommendation of the Commission has no logical relationship to the degree of seriousness of the alleged wrong upon which it is based. That if innocent inadvertence or oversight of the degree charged in this inquiry which lacks the element of corrupt motive is to be the basis for removal of judges from the bench, no judge will be safe from removal for any technical inadvertence or oversight or imposition which he was unable to anticipate and thwart at inception.
He analogizes his situation with attorney disciplinary rulings of this Court where the extreme discipline of disbarment was not imposed.
For example, he cites that in The Florida Bar v. Thomson (Fla. 1973), 271 So.2d 758, 761, in reducing the disciplinary disbarment there involved, this Court held as follows:
"This Court has also required that not only a wrong, but a corrupt motive be present to authorize disbarment. Zachary v. State, 53 Fla. 94, 43 So. 925 (1907), and Gould v. State, 99 Fla. 662, 127 So. 309 (1930). The penalty assessed should not be made for the purpose of punishment, The Florida Bar v. King, 174 So.2d 398 (Fla. 1965), and neither prejudice nor passion should enter into the determination. State ex rel. Florida Bar v. Bass, 106 So.2d 77 (Fla. 1958). The purpose of assessing penalties is to protect the public interest and to give fair treatment to the accused attorney. State ex rel. Florida Bar v. Ruskin, 126 So.2d 142 (Fla. 1961). The discipline should be corrective and the controlling considerations should be the gravity of the charges, the injury suffered, and the character of the accused. Holland v. Flournoy, 142 Fla. 459, 195 So. 138 (1940). Applying these standards, we cannot agree with The Florida Bar that Thomson should be disbarred."
Here, he contends, absent any corrupt motive, removal for the offense of which he is found guilty by the Commission is harsh to say the least. That a reprimand would easily have sufficed. That the Supreme Court of Florida after all must finally determine just what sanction should be imposed, and the ultimate responsibility of making the determination in disciplinary cases rests with the Supreme Court. In re Kelly (Fla. 1970), 238 So.2d 565, 571. Here he contends, the sanction recommended *11 was overly excessive, contrary to the evidence and law, shocking to the judicial conscience, not supported by the "clear and convincing evidence" and against the manifest weight of the evidence; that a distinguished judicial career should not be lightly destroyed forever together with the good name and reputation of the office-holder.
There is no evidence that Justice Dekle personally profited in any way in the matter or that he was bribed in any way to use the ex parte memorandum. It does not appear that the Mason memo changed his mind about the case or that it was materially different in content from the properly filed briefs of the power company. He had voted to reverse the Public Service Commission immediately after the oral argument because he agreed with the power company's side of the argument. He stoutly maintains that he did not know the Mason memo was ex parte at the time he utilized it in preparing his dissent.
We are unable from all the circumstances to infer that his action in connection with the memorandum reflects wilful and deliberate corrupt misconduct. Compare The Florida Bar v. Rayman (Fla. 1970), 238 So.2d 594 and The Florida Bar v. Quick (Fla. 1973), 279 So.2d 4. The cases cited hereinbefore submitted by the Commission do not contemplate that a judge at his peril must refrain from conduct which he could have no reason to suspect will cause suspicion. There is no evidence that he deliberately and knowingly used the memo in furtherance of a crooked or corrupt purpose.
We do agree that he was lax, obtuse and insensitive in either not recognizing the memo was improper when Mason gave it to him or was not intuitive or anticipatory enough then or later on to have had the memo checked out to determine if it was proper for him to use it. Despite his protestations, the very nature of the affair smacks of the appearance of evil damaging to the State's judiciary at its top echelon.
We agree with the Judicial Qualifications Commission that Justice Dekle was guilty of obtuseness and raw ineptness in the matter which cannot be condoned or go uncondemned.
The Judicial Qualifications Commission, speaking for itself, the bench, the bar, and the public are understandably and properly concerned about any conduct which may affect the confidence of the people in the court or of any of its members. It understandably expects a higher standard of conduct from the judges of this state than of anyone else connected with the judicial system. Its counsel states "it is from the Bar's elite  in terms of legal ability, intellect, temperament and, of greatest importance, integrity  that we expect them [judges] to come."
These are noble goals. Continued effort to attain those goals must be utilized. It must be remembered, however, that every decision made by this Court should be rendered in the light of its effect not only on the immediate litigants but also its effect on others. If the removal recommendation of the Judicial Qualifications Commission in this cause involving Justice Dekle were to be followed, the long range goals sought above may and probably would be impaired. If a judge is subject to being removed from office for any inadvertent and non-volitional violation of the canon of ethics, many lawyers would be loath to risk the role of judge. Because of the elective process, the compensation and extreme demands of the office of justice, few of the caliber of dedicated counsel such as those who represented the parties in this inquiry would step forward and offer their services in a judicial capacity. If an additional dimension of being able to remove a judge on the stated grounds in this inquiry prevails, then such would be a further deterrent to their willingness to serve in judicial office.
Except for the fact there is no clear showing of corrupt motive or deliberate or intentional wrong, we would agree with the Commission's recommendation of the extreme discipline of removal. However, *12 in view of the rationale analogously imbedded in attorney disbarment cases, we feel constrained to stay our hand in this inquiry under the particular circumstances and administer a public reprimand.
We take notice that Justice Dekle has authored many important opinions for the Supreme Court. He has expeditiously processed the cases assigned to him. His contributions to the body of the law have been notable and outstanding. He has been a jurist in Florida for many years. His status as an outstanding jurist for several years past must be considered in the overall picture herein and taken into consideration in fixing the discipline to be imposed.
In conclusion, we find Justice Dekle guilty of impropriety and laxness and we publicly reprimand him therefor for the reasons hereinbefore stated, but find him not guilty of corrupt motive.
It is so ordered.
ERVIN (Retired) Supreme Court Justice and McDONALD, MASON and NELSON, Circuit Court Judges, concur.
DuVAL, Circuit Court Judge, dissents with opinion, with which ADAMS (Retired), Supreme Court Justice and JOHNSON, District Court Judge, concur.
DuVAL, Circuit Court Judge (dissenting):
I concur with the facts found in the majority opinion, however, I cannot agree with the order of reprimand.
The authority for the Judicial Qualifications Commission to recommend the discipline of a justice or judge is contained in Art. V, Paragraph 12(d) of the Florida Constitution:
Article V, Para. 12(d) reads:
"Upon recommendation of two-thirds of the members of the judicial qualifications commission, the supreme court may order that the justice or judge be disciplined by appropriate reprimand, or be removed from office with termination of compensation for willful or persistent failure to perform his duties or for other conduct unbecoming a member of the judiciary."
Before the Commission can recommend to the Supreme Court that a justice or judge be disciplined, the Commission must find from clear and convincing evidence that the justice or judge has been guilty of "willful or persistent failure to perform his duties" or has conducted himself in such a manner as to be guilty of "conduct unbecoming a member of the judiciary." The Judicial Qualifications Commission is not authorized to recommend discipline for any conduct other than these two specific reasons.
There is no charge or finding by the Commission that Justice Dekle "willfully or persistently failed to perform his duties."
The Commission bases their recommendations for discipline of Justice Dekle on the findings of fact contained in their recommendations, concluding that Justice Dekle was guilty of "conduct unbecoming a member of the judiciary."
The Commission did not charge Justice Dekle with "willfully or persistently failing to perform his duties" and there is no suggestion that he is not perfectly fit to perform his duties as a justice. This leaves the charge of "conduct unbecoming a member of the judiciary" which is before this court for consideration.
In the case of In re Kelly, 238 So.2d 565, this court held that:
"Conduct unbecoming a member of the judiciary may be proved by evidence of specific major incidents which indicate such conduct, or it may also be proved by evidence of an accumulation of small and ostensibly innocuous incidents which, when considered together, emerge as a *13 pattern of hostile conduct unbecoming a member of the judiciary."
The matter before us must come under the proof required to prove a specific major incident or misconduct. It is admitted by the Commission that Justice Dekle was not influenced to change his vote in any way by the memorandum; that the memorandum did not contain any matters not already contained in the briefs filed in the cause, and that his final opinion was taken from the briefs filed and not from the memorandum.
To prove a specific major act sufficient to warrant discipline necessitates that the act be connected with corruption or willful violations of the law.
I can not find, by clear and convincing evidence, that the conduct of Justice Dekle was sufficient to find him guilty of a specific major act involving any degree of corruption or willful violation of the law sufficient to warrant discipline.
ADAMS (Retired), Supreme Court Justice and JOHNSON, District Court Judge, concur.