Michael J. Satz State Attorney For Lauderdale
QUESTION:
Does the writing and publication of an open letter or newsletter by elective municipal officers using their official titles for the purpose of endorsing or critizing a candidate for municipal office constitute the use of official authority or influence for the purpose of interfering with an election, or the coercing or influencing of another person's vote, or affecting the result thereof in violation of s. 104.31(1)(a), F. S.?
SUMMARY:
Section 104.31(1)(a), F. S., does not prohibit elective municipal officers from using their official titles in connection with the writing and publication of open letters or newsletters endorsing or criticizing candidates for public office since such conduct, standing alone, would not of itself evince the corrupt use of official authority or influence for the purpose of interfering with an election, or coercing or influencing votes, or affecting the result of the election. Moreover, s. 104.31(1)(c), F. S., exempts such conduct as `political activity' of exempted elective officials from the operation of s. 104.31(1)(a), F. S.
Your letter advises that your inquiry has been prompted by the conduct of certain elective municipal officers in two municipalities during the course of municipal elections. You state that in one municipality `the present Vice-Mayor (not up for reelection) and an out-going Councilman, wrote an open letter, using their official titles, endorsing a candidate for the outgoing councilman's seat.' You further state that the letter `was published as a political advertisement by the endorsed candidate, all in accordance with applicable statutes.' In the second municipality, you advise that `[a] present sitting Councilman had a Newsletter printed at his own expense, in which he attacked the voting record of two Councilmen who were running for reelection.'
Your inquiry then is whether such conduct on the part of these elective municipal officers under these circumstances violates s.104.31(1)(a), F. S., which provides:
 (1) No officer or employee of the state, or of any county or municipality thereof, except as hereinafter exempted from provisions hereof, shall:
 (a) Use his official authority or influence for the purpose of interfering with an election or a nomination of office or coercing or influencing another person's vote or affecting the result thereof. (Emphasis supplied.)
Section 104.31(2), F. S., provides that `[a]ny person violating the provisions of this section shall be guilty of a misdemeanor of the first degree . . . .'
An examination of the subject statute does not provide a clear and definitive answer as to the precise nature of the conduct which is proscribed and penalized by its terms. However, s. 104.31(1)(a), F. S., is part of a larger statutory scheme of prohibited election practices derived from the Corrupt Practices Act, Ch. 6470, 1913, Laws of Florida. The Corrupt Practices Act was initially enacted in 1913 in order to `Define, Prevent, and Punish Certain Offenses and Corrupt and Illegal Practices in connection with . . . Elections . . . .' Title, Ch. 6470, supra. The act was also passed in response to a mandate found in s. 26, Art. III of the 1885 State Constitution:
 Laws shall be passed regulating elections, and prohibiting under adequate penalties, all undue influence thereon from power, bribery, tumult or other improper practice.
Although the 1968 Constitution does not expressly require the Legislature to prohibit and provide penalties for improper election practices, the power to do so is inherent in the legislative power of the state vested in the Legislature by s. 1, Art. III, State Const., and that body remains `charged with the responsibility and authority of regulating the election process to protect the integrity of that process and to insure free and fair elections.' Sadowski v. Shevin, 345 So.2d 330, 332 (Fla. 1977).
It is well established that, where uncertainty or ambiguity exists in a statute, the legislative intent should be ascertained by a consideration of the entire act and others in pari materia. See,e.g., Mann v. Goodyear Tire Rubber Co., 300 So.2d 666 (Fla. 1974); State v. Beardsley, 94 So. 660 (Fla. 1922); State ex rel. Triay v. Burr, 84 So. 61 (Fla. 1920). Applying this principle to your inquiry, it would be helpful in interpreting s. 104.31(1)(a), F. S., to consider other statutes enacted on the same subject matter — unlawful or corrupt election practices — so as to determine legislative intent.
In State v. Brown, 298 So.2d 487 (4 D.C.A. Fla., 1974), the court commented generally upon the provisions of the Corrupt Practices Act, carried over into Ch. 104, F. S. The court noted that the act
 makes unlawful a variety of acts which subvert the elective process, e.g., false swearing, fraud in connection with casting a vote, corruptly influencing voters, illegal voting, and any act by an official who willfully and fraudulently violates any of the provisions of the election code. [Id. at 489.]
The Brown court also referred on several occasions to the prohibitions and penalties for `corrupt practices' contained in Ch. 104. Thus, it may be inferred from Brown that the prevention of corruption and fraud in the election process is the common thread which links the various unlawful practices prohibited under that chapter.
In Johnson v. Harris, 188 So.2d 888 (1 D.C.A. Fla., 1966), the appellate court affirmed the trial court's dismissal of a complaint against a candidate and his campaign treasurer charging violation of a statute which prohibited the incurrence of expenses in excess of funds on deposit in the campaign account. The court ruled that `it is not every infraction of the election code that calls for the imposition of penalties prescribed thereby. The infractions, in order to be subject to the sanctions of the statute, must have been knowingly committed.' (Emphasis supplied.) 188 So.2d 892. The court further noted that there had been no showing that `the acts of [the defendants] were corrupt or the product of an evil design to defeat the free choice of voters in a democratic election.' [Id.; emphasis supplied.]
Accordingly, I am of the view that s. 104.31(1)(a), F. S., should be construed so as to prohibit the corrupt use of official authority or influence for the purposes set forth therein. Cf. Board of Public Instruction v. Doran, 224 So.2d 693, 699 (Fla. 1969), in which the court ruled that a criminal violation of the Government in the Sunshine Law, s. 286.011, F. S., impliedly required a charge and proof of scienter; and In re Dekle,308 So.2d 5 (Fla. 1975), in which the Supreme Court ruled that under existing law a judge should not be removed from office unless his actions reflected a corrupt motive or purpose.
My conclusion that s. 104.31(1)(a), F. S., should be construed to require a corrupt intent as an element of the criminal offenses embraced by its terms is also supported by s. 104.31(1)(c), F. S., which states, in part:
 The provisions of paragraph (a) shall not be construed so as to limit the political activity in . . . any election of any kind or nature, of elected officials or candidates for public office in the state or of any county or municipality thereof . . . .
Cf. AGO 072-62, in which this office noted that s. 104.31(1)(a),supra, was designed `to prevent the misuse of official authority or position . . .' and further observed, parenthetically, that certain elected public officials (including municipal officers) and certain appointed officers were exempted from the provisions of s. 104.31(1)(a), F. S., by the provisions of what is now s.104.31(1)(c), F. S.
Accordingly, I am of the view that the affixing of a public officer's official title to an open letter or newsletter criticizing or endorsing another person's candidacy does not, per se or standing alone, violate s. 104.31(1)(a), F. S., since such conduct does not itself evince a corrupt use of official authority or influence for the purpose of interfering with an election, or coercing or influencing votes, or affecting the result of an election. The mere use of an official title in political advertisements or other political related writings falls within the realm of `political activity' and is not within the scope of activities prohibited by s. 104.31(1)(a). Moreover, I am of the view that s. 104.31(1)(a), F. S., as construed in this opinion, does not appear to infringe upon any constitutionally protected political speech which may be engaged in by such officers. An illustration of this principle may be found in a recent Louisiana case. State v. Newton, 328 So.2d 110 (La. 1976). The Newton case involved a challenge to the constitutionality of a statute which, among other things, prohibited:
 . . . the giving or offering to give [and the acceptance or offer to accept], directly or indirectly, any money, or anything of apparent present of prospective value to any voter at any . . . election . . . with the intent to influence the voter in the casting of his ballot.
In its original opinion, the court ruled the quoted portion of the statute unconstitutional because it was overbroad. According to the court, the statute prohibited activities entitled to protection under the First Amendment (such as to promise better government; give voters handbills, buttons, etc., to influence them to vote for a candidate; promise to lower taxes) as well as those activities which may constitutionally be proscribed (such as bribery).
On rehearing, however, the court reversed its earlier opinion on the overbreadth issue, stating that in its prior opinion the majority had `failed to adequately consider the context and purpose of the statute.' State v. Newton, supra at 117. The court stated on rehearing that `[t]he purpose of the statute is to prohibit the corruption of voters, which it seeks to do by criminalizing the giving or accepting of money or anything of value at any election with the corrupt intent to influence the elector's vote.' [Id.; emphasis supplied.] The court thus concluded that the statute was constitutional:
 As used in the statute, value is determined by the application of a subjective, rather than an objective, test. The requirement of value is satisfied if the thing has sufficient value in the mind of the person to whom it is corruptly offered to influence his actions. . . . Contrary to our first impression, it is clear that a platform promise of better government, lower taxes, or welfare reform made generally to a group of voters or to individual voters is not bribery within the meaning of the statute. . . . The restriction achieved by the requirement of a corrupt intent to influence the recipient's vote effectively prevents the statute from infringing upon a candidate's freedom of expression. [Id. at 118; emphasis supplied.]
With respect to the instant case, it is clear that the purpose of s. 104.31(1)(a) is to prevent corruption of the election process, not to limit protected political speech by public officers (or the `political activity' of elective officers exempted therefrom by s.104.31(1)(c), F. S.). See, e.g., Buckley v. Valeo, 424 U.S. 1
(1976); Mills v. Alabama, 384 U.S. 214 (1966); Spears v. State,337 So.2d 977 (Fla. 1976), as to the protections afforded political discussions, political speech, and other activities under the First Amendment.
Your question is accordingly answered in the negative.
Prepared by: Particia R. Gleason, Assistant Attorney General