RAWLS, Chief Judge.
The Appellants are Mutual Insurance Rating Bureau (hereinafter referred to as Mutual), a rating organization, and its 45 members and subscribers authorized to engage in the casualty insurance business in the State of Florida. Mutual is licensed under the provisions of Section 627.221, Florida Statutes, F.S.A., and exists for the purpose of making rates to be used by more than one authorized insurer. Pursuant to Section 627.391, Florida Statutes, F.S.A., Mutual appeals an order of the Insurance Commissioner disapproving its rate filing which reflected a substantial increase in premiums to be charged its policyholders for bodily injury and property damage automotive casualty insurance.
Appellants pose the following points on appeal, viz.:
1. The Commissioner erred in holding that the proposed rates, when applied to Dade County, are excessive and unfairly discriminatory.
2. The Commissioner erred in holding that the use of the same expense allowance by stock and mutual companies made the rates excessive.
3. The Commissioner erred in taking judicial notice of facts after the hearing was concluded.
The subject of this proceeding is a “rate filing” by the rating bureau on behalf of its members and suscribers. The “filing” is in actuality a petition for revision of the rates being charged by Appellants. The statutory law governing such proceedings is found in the Insurance Code, Chapter 627, Florida Statutes, F.S.A. Subsequent to the formal filing in this proceeding a public hearing was held by an examiner. It is upon the record there developed that the Insurance Commissioner made his findings.
This type of proceeding necessarily calls for extensive statistical data and the expert analysis of same. Establishment of rates for private passenger automobile liability and property damage insurance policies is a complex matter. Such proceedings are unique in that the insurance companies decide what they want to charge and submit same to the Insurance Commissioner for his approval. Unlike other regulatory agencies, the Insurance Commissioner has no authority to change by way of increase or decrease any of the rates requested by the companies; he may only approve or disapprove, and give his reasons for so doing. Although the statutory law does not contemplate an adversary proceeding, the Insurance Commissioner, when performing the responsibility of his office in scrutinizing filings and in questioning the accuracy of evidence submitted to support proposals for increases in rates, must bear in mind that he is the guardian of the welfare of the general public. Thus he is charged by law not only to approve increases when he determines that existing rates are inadequate but to disapprove proposals for rates which are excessive or unfairly discriminatory.
The only testimony presented at the public hearing was that of Mutual’s actuary, Dr. Clyde H. Graves. He offered numerous exhibits incorporating statistical data which was introduced in the record and referred to by him in testifying. Dr. Graves presented alarming facts pertaining to the increase in injury and slaughter of human beings on the highways of this state. For example, deaths occurring due to motor vehicle accidents in Florida increased from 1203 in 1961 to 1545 in 1964. These figures, when compared with motor vehicle registrations during the two periods, reflected a substantial percentile increase. Injuries reflected an even more grim picture in that 48,464 persons were injured in motor vehicle accidents in 1961, while 86,180 were injured in 1964. Again, a substantial percentile increase is shown when weighed against the motor vehicle registrations. He also pre *391 sented data showing that countrywide hospital costs per case increased 31% from 1960 to 1964; and during this same period of time physicians’ fees increased approximately 11%. A review of the evidence adduced from this witness reveals a substantial rise in total accident cost during the period 1960 to 1964 due to a higher incident of injury and death, an increase in the number of accidents and the soaring costs of medical care. A review of the record leads one to the inescapable conclusion that existing private passenger car liability and property damage insurance rates are inadequate, but such conclusion does not resolve the ultimate question of whether this court must, as a matter of law, reverse the order of the Insurance Commissioner.
Mutual’s first point questions the Commissioner’s finding that the rates as applied to Dade County are excessive and unfairly discriminatory. In examining this point we must delve into the overall proposal. By its filing, Mutual requested approval of a combined statewide average increase in rates for bodily injury and property damage of 28.6%. This 28.6% was allotted to the twelve territorial areas [1] in varying percentages. Brevard County’s experience during the three year period utilized indicated a rate increase of 64%; Pinellas indicated an increase of 49.3%; Sarasota an increase of 54.8%; Broward an increase of 39.1% ; Duval an increase of 25.2%; Palm Beach an increase of 26.2%; and save for Dade County, each of the other territories reflected an increase exceeding 33%%- As to Dade County, Dr. Graves testified that the experience in that territory was much better than in other parts of the State; its loss ratios were lower; the experience there in the years 1961, 1962 and 1963 showed improvement; and “ * * * There seemed to be something happening in Dade County which indicated that perhaps somewhat different treatment should be given * * * a decision which was made to take the experience of Dade County for the one year only instead of for the three years which is the normal procedure. * * * This change goes part of the way toward, you might say, determining a rate based on Dade County’s own experience.” The increase allocated to Dade County was 12.1%. Further explaining the proposal, Dr. Graves testified that “ * * * a judgment by the members of our automobile rating committee * * * ” was made “ * * * so that in no territory will the combined bodily injury and property damage increase be greater than 33%% and so that is not an actuarial limitation. That is an rtnderwrit-ing judgment, business judgment in regard to a change in the increase * * *. In other words, when a limitation is imposed on a territory, that the rate change not exceed 33%%. That was not picked up by any other territory and we do not attempt to, what we call, balance out to get overall.” (Emphasis supplied.)
It was against this background that the Commissioner found:
“(7) The . Mutual Insurance Rating Bureau limits its request for rate increase to a given territory to 33%% when the indicated rate increase exceeds this figure. Thus, Brevard County with an indicated rate increase of 64.9% has its increase limited to 33%% while Dade County with an indicated rate increase of 12.1% is increased the entire 12.1% for Bodily Injury Liability by the terms of this filing.
* * * * * *
“(8) (a) The said filing and the proposed rates, when applied to Dade County, are excessive and unfairly discriminatory in comparison with the rates charged throughout other territories in the State.”
*392 Mutual insists that it has not asked for any more than an adequate rate for the territory of Dade County. However, in the same statistical breath it says it is only asking approximately one-half of an adequate rate from the motorists of the territory of Brevard County. Reviewing the foregoing statistical data, we cannot hold that the Commissioner erred in reaching his conclusion as to discrimination when' applied to Dade County.
 Appellant’s next point challenges the Commissioner’s finding that Mutual is not entitled to utilize the same expense allowances as stock companies. There is a distinct legal difference between a stock company and a mutual company. The statute provides for “a reasonable margin for underwriting profit and contingencies” for stock companies. Needless to say, the very nature of a mutual company is a nonprofit operation and it has no lawful right to profits. The statute does provide that consideration be given to dividends. However, as a matter of law the Commissioner is not required to approve for a mutual company in the name of dividends a rate increase contemplating the identical margin of profit as that sought by stock companies. Due consideration to dividends may well, in the discretion of the Commissioner, be substantially lower for mutual companies than that allowed as profit for stock companies.
The final question considered pertains to Mutual’s complaint that the Commissioner erred in taking judicial notice of facts after the hearing was concluded and in taking judicial notice of records in his office without introducing them into evidence at the hearing. The Commissioner in his order took judicial notice of certain matters as follows:
"(1) The Mutual Insurance Rating Bureau develops and files rates for mutual insurance companies, primarily.
“(2) The National Bureau of Casualty Underwriters develops and files rates for stock insurance companies.
“(3) A mutual insurance company differs significantly from a stock insurance company in that the mutual insurance company is owned by its policyholders while a stock insurance company is owned by stockholders.
“(4) The filing of the National Bureau of Casuality Underwriters for a ‘Revision of Automobile Liability Insurance Rates — Private Passenger Automobiles’ dated April 30, 196S.
“(5) The current rates of the Mutual Insurance Rating Bureau, for limits of $10,000/20,000/5,000, are 99.7% of the National Bureau of Casualty Underwriters’ rates for Private Passenger Automobile Bodily Injury Liability and 96.6% for Private Passenger Automobile Property Damage Liability.
“(6) Countrywide expense experience shows that the Mutual companies’ production costs for Automobile Property Damage Liability as a percentage of premium were approximately 79% of those for stock companies in 1963, 74% in 1959 and 78% in 1961, or consistently lower.”
We have not found in this record a petition for rehearing or any other challenge made by Mutual as to correctness of the matters and things judicially noticed by the Commissioner. Furthermore, we find that Mutual is in no position to complain in such proceedings as to the factual matters well known in the industry. As an example, Mutual’s witness testified at length as to a so-called bench mark of 65.5% of the rate representing a break even point assumed by the companies. He further testified that it has been agreed upon by the State and the Bureau on behalf of *393 the companies that if the experience of the companies becomes such that the losses exceed 65.5% of the premium, it is an indication that the rates are inadequate. There is not one iota of evidence adduced by Mutual as to the actual administrative expenses of the company, the efficiency of their operation, or statistical data supporting the so-called bench mark of 65.5%. It appears that Mutual assumes that the Commissioner had independent knowledge of the reasonableness of such percentage and did not pursue the matter further. Therefore, Mutual desires to rely upon the Commissioner’s “judicial notice” of his independent knowledge of facts not contained in this record when it supports their position, but objects to his doing likewise when it does not support their position. Mutual in referring to the general philosophy of rate filing states, “If the practice must be to justify everything anew in every hearing it will, of course, make for very prolonged hearings that will be filled with materials expressing over again what had been settled as proper by reason of approval and current use of previous filings.” Implicit in this statement is Mutual’s position that the Commissioner should take judicial notice of matters and things appearing in the records of the office of the Insurance Commissioner even though same were not introduced in evidence in the particular administrative proceeding. The Commissioner was not in error in taking judicial notice of the above quoted portions from his order.
We have carefully considered the other points posed by Appellant on appeal, but find that it is not necessary to discuss them.
The order appealed is affirmed.
CARROLL, DONALD K., and JOHNSON, JJ., concur.

. Territories utilized and previously approved by the Commissioner were: Dade County, Duval County, Broward County, Palm Beach County, Orange County, Pinellas County, Hillsborough County, Escambia County, Polk County, Sarasota County, and Brevard County.