SMITH, Judge.
Citizens of the State of Florida, represented by the Office of Public Counsel (OPC), appeals two orders of the Florida Public Service Commission (PSC) granting a rate increase to appellee Prima Vista Utility Company, Inc. (Prima Vista). The OPC contends that the PSC improperly re *113 lied on certain testimony in rendering its decision.[1] We affirm.
Prima Vista sought permission from PSC in May 1983 to increase the rates it charged for sewer service provided to customers in Ocoee, Florida, Thé PSC subsequently issued a “proposed agency action” order in March 1984, granting this request to the extent of allowing Prima Vista to increase its annual revenues by approximately $295,000. Before this order by the PSC became final, appellant, through the OPC, filed a notice to intervene in the proceedings below. This motion was granted by PSC, with the result that hearings were held on the proposed rate increase in December 1984.
Among the issues raised by appellant below was the proper used and useful percentages to apply to two sewage treatment plants operated by Prima Vista at the time of its application, known as the Prima Vista and Twin Lakes plants.[2] Kirk Borowsky, accepted by all parties as an expert in regulatory accounting, testified that, in his opinion, Prima Vista’s Twin Lakes plant had a used and useful percentage of 60%, to which he added a “margin of reserve” for anticipated future service capacity to arrive at a final used and useful percentage for that plant of 85%. The PSC accepted the 60% figure, but arrived at a final figure of 78.5%. Borowsky testified that his methodology in arriving at this figure, known as the “five to ten day peak flow method,” was based on his past experiences in prior PSC rate cases; that is, Borowsky testified, he believed this methodology had been accepted as proper by the PSC. In arriving at his conclusions, Bo-rowsky used undisputed flow figures for the two facilities furnished to him by Prima Vista’s engineers.
As below, appellant argues in this court that the selection of a used and useful methodology is an opinion that may only be rendered by a qualified engineering expert. Appellant contends that, contrary to the PSC’s finding, Borowsky’s testimony could not be a mere “implementation” of recognized PSC policy since, according to appellant, no such policy has yet emerged from previous PSC rate making decisions. Furthermore, appellant asserts, absent consideration of Borowsky’s testimony, no evidence would exist in the record supporting the used and useful methodology adopted by the PSC. We find these arguments to be without merit.
Contrary to appellant’s assertions, a record basis exists for the PSC’s acceptance of Borowsky’s testimony as competent evidence on the used and useful percentage issue, as well as for the final used and useful percentages used in awarding the rate increase. William Becker, accepted by the parties as an expert on used and useful percentages, testified on behalf of the PSC staff that a used and useful analysis should consider an engineering calculation of treatable water flow through a facility, the prudence of the utilities’ investment decisions, and the benefits derived by present and future customers from these decisions. Thus, both Borowsky and Becker testified, a used and useful calculation is not based upon purely engineering concerns, but rather, includes consideration of utility regulation policies; specifically, the need to provide a utility with an incentive to invest prudently by increasing the used and useful percentage attributable to a treatment plant to include currently unused capacity.
PSC’s expert found the Twin Lakes plant 100% used and useful. The *114 PSC in its final order arrived at a used and useful percentage for the plant of 78.5%. The four experts who testified all used differing methodologies and arrived at different percentages. The question of whether a used and useful calculation should rely strictly on engineering concerns or should embody other factors is one infused with policy considerations for which the PSC has special responsibility. McDonald v. Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977). It is apparent that the determination of used and useful percentages is a matter as to which reasonable minds may differ. Moreover, since it is the prerogative of the PSC to evaluate the testimony of competing experts and accord their conflicting testimony whatever weight the PSC deems appropriate, Gulf Power Company v. Florida Public Service Commission, 453 So.2d 799 (Fla.1984), we find that competent, substantial evidence exists in the record supporting the PSC’s decision concerning the used and useful calculation it adopted for Prima Vista’s Twin Lakes plant.
For the foregoing reasons, the order appealed from is AFFIRMED.
MILLS and THOMPSON, JJ., concur.

. Appellant also argues that the PSC did not explicitly rule upon its objection to Borowsky’s testimony. We read the record, as do Prima Vista and PSC, as clearly reflecting a ruling by PSC’s chairman, who presided at the hearing, that Borowsky’s testimony was accepted subject to being stricken if later shown to be inadmissible. The "reservation” of ruling was for the purpose of striking testimony already accepted, rather than to determine whether to accept testimony in the first instance.

. Although neither the testimony presented below nor the parties’ briefs make this clear, "used and useful” percentage is evidently a term utilized in the utility regulatory field to describe the extent to which a facility is being utilized, as compared to its actual rated capacity.