CORRECTED OPINION

PER CURIAM.
Palm Coast Utility Company (Palm Coast), which provides water and wastewa-ter service to customers in Flagler County, appeals a final order of the Florida Public Service Commission which granted Palm Coast a rate increase in an amount substantially less than requested by the utility. Palm Coast raises seven issues on appeal. For the reasons that follow, we reverse in part and affirm in part.

Used and Useful Property

Palm Coast argues that the Commission erred in determining various components of the utility’s rate base. A regulated utility is entitled to an opportunity to earn a fair rate of return on its “rate base” — the capital prudently invested in the utility’s facilities that “are used and useful in the public service.” § 367.081(2)(a), Fla. Stat. (1995); Citizens v. Hawkins, 356 So.2d 254, 256 (Fla.1978). For each component of the utility’s water and waste water system, the Commission is required to determine that portion which is “used and useful.”
Lot count methodology. Palm Coast first contends that the Commission erred in utilizing a so-called “lot count” methodology in determining that portion of the Palm Coast’s water transmission and distribution system and its wastewater gravity mains which are deemed used and useful in the public service. § 367.081(2)(a), Fla. Stat. (1995). The Commission acknowledges that the lot count methodology represented a departure from the methodology previously employed, in which used and useful plant was determined based upon the number of equivalent residential connections.
We recognize that the Commission is to be accorded “considerable discretion and latitude in the rate-fixing process,” Gulf Power Co. v. Bevis, 296 So.2d 482, 487 (Fla.1974), and its determination of the applicable “used and useful” considerations should be given great weight since such considerations are infused with policy considerations for which the Commission has special responsibility and expertise. Citizens v. Florida Pub. Serv. Comm’n, 488 So.2d 112 (Fla. 1st DCA 1986). The Commission’s discretion, however, is limited by chapter 120, Florida Statutes (Supp.1996). As we observed in Southern States Utilities v. Florida Pub. Serv. Comm’n, 714 So.2d 1046, 1057 (Fla. 1st DCA 1998),
For the most part, the Legislature has committed used and useful calculations to the expertise and discretion of the [Public Service Commission].... It is not for the reviewing court to dictate methodology or other policy with the PSC’s “statutorily delimited sphere.” As regards used and useful calculations, our concern thus far has been only that the PSC comply with the procedural requirements of the Administrative Procedure Act, chapter 120, Florida Statutes (1997), in making changes in policies governing these calculations. The PSC is, after all, subject to the Act.
(Citations omitted).
We note that when the order under review was entered, the Commission did not have the benefit of our decisions in Florida Cities Water Co. v. State, Pub. *485 Serv. Comm’n, 705 So.2d 620 (Fla. 1st DCA 1998), and Southern States. We stated in Florida Cities Water, and reaffirmed in Southern States, that, under chapter 120, Florida Statutes (Supp.1996), a shift in rate-making policy must be supported by expert testimony, documentary evidence or other evidence appropriate to the nature of the issue involved. See also Manasota-88, Inc. v. Gardinier, Inc., 481 So.2d 948, 950 (Fla. 1st DCA 1986). As was the case in Southern States and Florida Cities Water, we reverse and remand with directions that the Commission provide explanation, with record support, for the change in methodology in determining the used and useful portion of Palm Coast’s water transmission and distribution mains and its wastewater gravity mains. The record before us lacks an adequate basis for the change in methodology. As provided in Southern States, on remand, further evidence may be adduced on this question.
In so holding, however, we reject Palm Coast’s suggestion that it was denied notice that the lot count methodology was an issue below. The prehearing order indicates that the staffs of both the Commission and the Office of the Public Counsel had proposed using the lot count methodology. This proposal was also explored in prehearing exhibits and pre-filed testimony. Thus, Palm Coast was on clear notice that this methodology would be considered by the Commission.
Fire Flow Allowance. Palm Coast also argues that the Commission erred when, in determining used and useful plant, it eliminated a fire flow allowance for the wells. We agree. When Palm Coast’s rates were previously set by the Commission, an allowance for fire flow was included for the wells, water treatment, and storage facilities. Despite this previously granted allowance for the source of supply, the Commission refused to continue such an allowance because, “from an engineering design perspective” the allowance was not cost effective. Again, such a decision constituted a departure by the Commission from its previous treatment of Palm Coast, and such a departure is not justified on the record. Southern States, supra. Accordingly, we reverse and remand for further proceedings, including the introduction of additional evidence, on this issue.
Annual Average Daily Flow. Similarly, Palm Coast argues that the Commission erred when it used an annual average daily flow, rather than a three-month average daily flow measurement, when calculating the used and useful portion of the wastewater treatment plant. The use of an annual average daily flow is another departure from the Commission’s previous practices. The Commission has justified this departure by the fact that the Department of Environmental Protection, which issues the permit for operation of a waste-water treatment plant, had only recently begun stating the capacity of the plant in terms of annual average flow. Thus, argues the Commission, for the used and useful ratio to be stated in like terms, the amount of demand must also be measured by annual average daily flow. However, we have previously held that the fact that the Department of Environmental Protection has changed the language used on its permits is an insufficient basis by itself for a departure from the previous methodology employed by the Commission. See Southern States, 714 So.2d at 1056. Accordingly, we reverse and remand for further proceedings and the taking of further evidence, if necessary, on this issue.

Margin Reserve

The Commission’s rate making practices allow the inclusion of a margin reserve allowance in a utility’s rate base. The margin reserve allowance enables the utility to expand its facilities in a prudent manner beyond current demand to meet short-term growth requirements while maintaining system reliability. “By allowing a margin reserve increment to the rate base, the Commission permits the utility to *486 charge 'its existing customers a portion of the cost necessary to have service available for future customers.” Rolling Oaks Utilities v. Florida Pub. Serv. Comm’n, 533 So.2d 770, 773 (Fla. 1st DCA 1988).
Palm Coast argues that the Commission erred in allowing a margin reserve period of only eighteen months for its water and wastewater treatment plants and of only twelve months for its transmission lines. We affirm the Commission’s allowance of an eighteen-month margin reserve period for the water treatment plant and the allowance of a twelve-month margin reserve period for the transmission lines. Competent substantial evidence, including the testimony of Commission witness Amaya, supported this decision.
As to the Palm Coast wastewater treatment facility, however, witness Amaya testified that the margin reserve period should be three years, and a utility witness testified that the margin reserve period should be five years. The Commission allowed a margin reserve of only eighteen months, explaining, as follows:
Our primary justification for allowing only an 18 month margin reserve period for plant is that the utility does not actually start accruing significant capital outlays until the plant is constructed. The utility has not presented any information which indicates that the construction period for its water or waste-water plants was greater than 18 months.
In establishing the margin reserve based only on the time required to construct a treatment facility, without considering the pre-construction period needed for design and permitting, the Commission departed from its prior practice. See, e.g., Florida Cities Water Co. (Golden Gate Division), 95 F.P.S.C. 6:136, 142 (1995). This departure from prior Commission practice was without record support. See generally Southern States, supra; Florida Cities Water, supra. Further, no competent, substantial evidence in the record supports an 18-month margin reserve period, if the complete design, permitting and construction time requirements are considered. While it might be possible to develop a margin reserve that reflects both the time required for the complete design, permitting and construction of a plant and the fact that a substantial portion of the capital expenditures are not required until the construction work begins, that was not done here. We therefore reverse and remand for the determination of the margin reserve allowance for the wastewater treatment plant based upon the competent substantial evidence in the record.[1]

Imputed Contributions-maid-of-Construction

There is one final issue which merits discussion. Palm Coast has argued that the Commission erred in using proposed service availability charges in determining imputed eontributions-in-aid-of-construction, because the actual service availability charges were known to the Commission as of November 1996, when the Commission entered an order approving Palm Coast’s new charges. The Commission has argued that the new charges were not, strictly speaking, in the record of this case and therefore the Commission was not obliged to use them. We find the Commission’s argument to be without merit. The Commission is certainly capable of taking notice of its own orders. Compare Mutual Ins. Rating Bureau v. Williams, 189 So.2d 389 (Fla. 1st DCA 1966).
We affirm the remaining issues raised on appeal without discussion. According *487 ly, the order under review is AFFIRMED in part, REVERSED in part, and REMANDED.
ERVIN, BENTON AND VAN NORTWICK, JJ., CONCUR.

. We note that the Commission policy and practice on margin reserve is the subject of Proposed Rule 25-30.341, which provides that one factor to consider when determining the period of margin reserve is "the time needed to meet the guidelines of the Department of Environmental Protection (DEP) for planning, designing, and construction of plant expansion." See Florida Pub. Serv. Comm’n v. Florida Waterworks Ass’n, 731 So.2d 836 (Fla. 1st DCA 1999) (reversing an order of the administrative law judge finding this proposed rule invalid).